Estate of Oscar A. Nordquist, Deceased, Georgiana G. Nordquist, Executrix, and Georgiana G. Nordquist v. Commissioner.
Estate of Nordquist v. Commissioner
Docket No. 4146-70
United States Tax Court
T.C. Memo 1972-198; 1972 Tax Ct. Memo LEXIS 60; 31 T.C.M. (CCH) 994; T.C.M. (RIA) 72198; September 11, 1972
*60 The petitioner supplied funds to enable another taxpayer to purchase certain stock pursuant to an agreement whereby the petitioner might, at the election of the other taxpayer, receive back either cash or a portion of the stock. When the taxpayer elected to pay the petitioner cash, the resulting gain was not realized on the sale or exchange of a capital asset within the meaning of sec. 1221, I.R.C., 1954. Docket No. 4146-70. T.C. Memo. 1972-198. John H. Perkins, Jr., Michael J. Close, and Bruce A. Ackerman, 140 Broadway, New York, N. Y., for the petitioners. Michael K. Phalin, for the respondent. QUEALY
Memorandum Findings of Fact *61 and Opinion QUEALY, Judge: In this proceeding, the Commissioner determined a deficiency in Federal income tax against the petitioners for the year 1965 in the amount of $2,569.60, together with an addition to the underpayment of tax for negligence pursuant to section 6653(a). [1] The petitioners have conceded the addition to the tax under section 6653(a). The sole question for decision is whether the sum of $11,400 reported by the petitioner as a long-term capital gain should properly have been included as ordinary income for the year 1965. Findings of Fact All of the facts have been stipulated and are found accordingly. At all times material herein, Oscar A. Nordquist and Georgiana G. Nordquist were husband and wife. They duly filed a joint Federal income tax return for the taxable year 1965 with the district director of internal revenue, St. Paul, Minnesota. Oscar A. Nordquist died December 22, 1968. Georgiana G. Nordquist was appointed executrix of his estate. On the date of the filing of the petition herein, her legal residence was Minneapolis, Minnesota. [2] *62 995 On February 12, 1964, petitioner entered into an agreement with one Oran D. Powell (hereinafter referred to as "Powell") pursuant to which petitioner would provide funds for the acquisition by Powell of stock in a corporation to be organized as Brookdale Motors for the purpose of operating a Ford dealership. Insofar as material herein, the agreement provided that upon the formation of the corporation, petitioner would advance to Powell the sum of $12,000 for the purpose of enabling Powell to acquire 50 percent of the stock of Brookdale Motors. As security for such advance, Powell agreed to deliver to petitioner all of the stock of Brookdale Motors to be acquired by him, together with a mortgage on his home in the amount of $12,000. The agreement further provided that at any time within 15 months from the effective date of the lease of the building in which Brookdale Motors would transact its business, Powell might terminate the agreement by the payment *63 to the petitioner of the sum of $24,000; at any time within 26 months from the effective date of the lease, Powell had the right to terminate the agreement by payment to the petitioner of the sum of $26,000; and, finally, if Powell did not elect to terminate the agreement on or before the 26th month from the effective date of the lease, Powell would transfer to petitioner the equivalent of 12 percent of the then outstanding stock of Brookdale Motors. Notwithstanding the terms of the agreement, Powell did not pledge any stock of Brookdale Motors nor did he give a mortgage on his home to the petitioner as security for the $12,000. In November 1965, or within the 15month period prescribed in the agreement, Powell gave to the petitioner the sum of $12,000 in cash and a first mortgage note for $12,000, having a then fair market value of $11,400, which petitioner accepted as constituting payment of $24,000 within 15 months of the effective date of the lease. In accordance therewith, the agreement was thereupon terminated. Petitioner reported the sum of $11,400, being the difference between the sum advanced by petitioner to Powell and the cash and fair market value of the mortgage note *64 received by the petitioner from Powell as gain from the sale or exchange of a capital asset held for more than 6 months in accordance with sections 1221 and 1222. Opinion Section 1221 defines a capital asset as "property held by the taxpayer (whether or not connected with his trade or business)," with certain exclusions not material to a decision of this case. The petitioner contends that she sold or exchanged a capital asset, stock of Brookdale Motors, when she received cash and a first mortgage note from Powell in November, 1965. The petitioner argues that when she advanced Powell the sum of $12,000 pursuant to the agreement, she became the equitable owner of a part of the stock of Brookdale Motors to be acquired by Powell. Therefore, when Powell elected to pay the petitioner the equivalent of $23,400, consisting of cash of $12,000 and a first mortgage note in the face amount of $12,000, in lieu of the delivery of said stock, there resulted a sale of the stock by the petitioner. Hence, petitioner argues, she sold a capital asset in which she had held a beneficial interest for more than 6 months, citing Quincy A. Shaw McKean, 6 T.C. 757 (1946). In the McKean case, *65 the taxpayer and his associate paid money to one Bird to enable him to acquire stock, in return for which Bird promised to deliver one-half of the stock to the taxpayer. Bird never delivered the stock and the taxpayer sued for specific performance. That suit was settled by a cash payment to the taxpayer. This Court held that the taxpayer had acquired a present benficial ownership in the stock and the profit was taxable as a gain from the sale of a capital asset. There, unlike here, the taxpayer's claim to the stock was unconditional. The other cases cited in support of this contention, Harold Becher, 22 T.C.M. 1251 (1963) and I.C.Bradbury, 23 B.T.A. 1352 (1931) are also distinguishable for the same reason. On the facts in this case, the Court is at a loss to understand how it can be argued that the petitioner ever acquired an interest in any stock. The petitioner gave Powell the sum of $12,000 to invest in the stock of Brookdale Motors on his own behalf. In consideration, Powell agreed either to pay the petitioner a sum certain or to transfer to the petitioner the equivalent of 12 percent of the stock of the corporation. Whether we characterize the transaction *66 as a loan, an option agreement, or merely as a transaction entered into for profit, is 996 immaterial. What the petitioner would receive in return for her investment of $12,000 was within Powell's control. By his choice, she received the equivalent of $23,400. During the period between her original advance and the repayment, it could not be determined whether she would receive $24,000, $26,000 or 12 percent of the stock of Brookdale Motors. In fact, even if she had ultimately received the stock, the transaction could well have resulted in the realizatio of a taxable gain. Cf. Elverson Corporation v. Helvering, 122 F. 2d 295 (C.A. 2, 1941). In this case what the petitioner received was nothing more than what she was entitled to under her contract. Cf. Walter P. Coleman, 8 B.T.A. 1126 (1927). She sold nothing. Powell merely performed his side of the "bargain." It is axiomatic that if one contracts for ordinary income, ordinary income will result. That is precisely the case here and the presence of a possibility that stock might be received, without more, does not change the outcome. Accordingly, Decision will be entered for the Respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The estate of Oscar A. Nordquist is a petitioner herein solely by reason of the decedent having filed a joint income tax return with his wife. Hereinafter references to "petitioner" are to Georgiana G. Nordquist.↩